```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION
```

UNITED STATES OF AMERICA

v.                                    Case No. 3:06-cr-289-J-33MCR

RODNEY LEON SMITH
_____/

**ORDER**

This cause is before the Court on consideration of the Magistrate Judge's Report and Recommendation (Doc. # 90), filed October 10, 2007, recommending denial of Smith's motion to suppress (Doc. # 82). Defendant Smith has timely filed objections to several factual findings made by the Magistrate Judge in the Report and Recommendation. (Doc. # 97.) The government filed a response in opposition to Defendant Smith's objections. (Doc. # 98.)

**I.    Background**

Defendant Rodney Leon Smith was arrested on August 2, 2006, when he pulled his green Buick into a gas station in Putnam County.[1] Law enforcement officers surrounded the Buick, arrested Defendant Smith, and promptly searched the Buick. (Doc. # 90, at 7.) The search revealed seventy-three grams of cocaine base near the vehicle's center console. (Doc. # 90, at 11.) On August 23, 2006, the grand jury handed up an indictment charging Defendant

---

[1] There is only one gas station discussed in this order. The Court refers to this gas station simply as "the gas station."

1

Smith with conspiracy to distribute cocaine base and four counts of distribution of cocaine base. (Doc. # 1.) On September 21, 2007, Defendant Smith filed a motion arguing that the arrest and search were unlawful, and that the resulting evidence must therefore be suppressed. (Doc. 82.) Specifically, Defendant Smith's motion argued that law enforcement officers had "no independent objective reasonable suspicion or probable cause to believe that the Defendant was involved in any illegal or criminal activity." (Doc. # 82, at 4.)

The Magistrate Judge held a hearing on Defendant Smith's motion to suppress and filed a report and recommendation recommending denial of Defendant Smith's motion. (Doc. # 90.) The report and recommendation reviews the testimony presented at the hearing by three law enforcement officers. (Doc. # 90, at 1-8.) Broadly, these officers testified that they were using a confidential informant to conduct controlled purchases of narcotics. On three occasions, the confidential informant arranged purchases of cocaine base from someone the officers believe was Defendant Smith. The first two transactions were consummated, and Defendant Smith was arrested when he showed up for the third.

The first transaction occurred at the gas station on June 5, 2006. Florida Department of Law Enforcement Special Agent Travis Smith testified that he was involved in an investigation of Defendant Smith on that date. (Tr. at 38.) The goal was to

2

purchase cocaine base from Defendant Smith using a confidential informant. (Tr. at 38.) While it is unclear how investigators initially became aware of Defendant Smith, Special Agent Smith testified that Defendant Smith had previously been identified as the person using a particular cellular telephone number and the person from whom the confidential informant would buy cocaine base (Tr. at 40). During the evidentiary hearing, the government played a video recording of this transaction. (Tr. at 42, 45-47.) The recording shows a dark-colored Buick back into a parking space. (Tr. Ex. 1.) Shortly after the Buick parks, a man in a horizontal-striped shirt -- the confidential source (Tr. at 46) -- walks to the driver's side of the Buick. (Tr. Ex. 1.) The Buick's door opens, and the pedestrian hovers at the open door for several seconds. (Tr. Ex. 1.) The driver of the Buick is not visible from the recording. (Tr. Ex. 1.)

Special Agent Smith testified that the confidential informant was searched before and after the transaction. (Tr. at 39.) After the transaction, cocaine base was retrieved from the confidential informant. (Tr. at 39.) The confidential informant told investigators that he purchased the cocaine base from Defendant Smith. (Tr. at 47-48.)

Corporal Toby Williams, of the Palatka Police Department, testified that he was assigned to conduct surveillance at the gas station on June 5, 2006. (Tr. at 10.) Douglas Schwall, a deputy

with the Putnam County Sheriff's Office, testified that he was also conducting surveillance of the gas station. (Tr. at 33.) Williams and Schwall obtained the license number of the Buick as it left the gas station. (Tr. at 11, 33.)

The second transaction occurred on July 28, 2006. Williams and a confidential informant traveled to an apartment complex in Flagler County. (Tr. at 12.) When they arrived, Williams saw Defendant Smith in a green Buick that appeared to be the same Buick at the gas station on June 5, 2006. (Tr. at 13.) Williams testified that he personally gave Defendant Smith $300. (Tr. at 13.) Defendant Smith then went into an apartment. (Tr. at 13.) When he emerged, he gave the confidential informant cocaine base, which the confidential informant immediately turned over to Williams. (Tr. at 13.)

Williams communicated the details of this transaction to other law enforcement officers involved in the investigation. (See Tr. at 14-15, 53-54.) A few days after the transaction, an analyst with the Florida Department of Law Enforcement prepared a photo array including a photograph of Defendant Smith. (Tr. at 54.) Special Agent Smith showed that photo array to Williams, and Williams circled the photograph of Defendant Smith. (Tr. at 15, 54.)

The third transaction was to occur on August 2, 2006. Instead, Defendant Smith was arrested on that day when he arrived

4

at the gas station in Putnam County. Special Agent Smith testified that he reviewed before Defendant Smith's arrest a recorded telephone call between the confidential informant and Defendant Smith on August 1, 2006. (Tr. at 64.) In that call, the confidential informant and Defendant Smith discussed a cocaine base sale to take place the next day. (Tr. at 66; see also Tr. Ex. 8B.) Schwall testified that, on August 2, 2006, he was assigned to remain with the confidential informant while the informant made at least one recorded telephone call to Defendant Smith. (Tr. at 24-25.) After reviewing the recorded call and speaking with the confidential informant, Schwall learned that the confidential informant had arranged to purchase cocaine base from Defendant Smith at the gas station. (Tr. at 28.) Schwall related this to Special Agent Smith. (Tr. at 28.)

Later on August 2, 2006, Defendant Smith arrived at the gas station driving a green Buick with the same license tag as the green Buick involved in the transaction on June 5. (Tr. at 69.) Special Agent Smith testified that this appeared to be the same Buick Defendant Smith had during the July 28 transaction at the apartment.[2] (Tr. at 69.) Immediately after Defendant Smith arrived, he was arrested and handcuffed. (Tr. at 69-70.) Within thirty seconds thereafter, law enforcement officers began searching

---

[2]Special Agent Smith did not explain how he was able to recognize the Buick as the one involved in the July 28 transaction.

5

his Buick. (Tr. at 70-71.)

After recounting this testimony, the Magistrate Judge concluded that the law enforcement officers had probable cause to arrest Defendant Smith on August 2, 2006. (Doc. # 90, at 10.) In support of that conclusion, the Magistrate Judge determined that law enforcement officers knew certain facts before arresting Defendant Smith. First, the confidential informant purchased cocaine base from Defendant Smith on June 5, 2006, at the gas station. Second, a green Buick drove away from the gas station after the June 5 transaction. Third, Williams and a confidential informant purchased cocaine from Defendant Smith on July 28, 2006, and Defendant Smith at that time had a green Buick that appeared to be the same Buick from June 5. Fourth, the confidential informant telephoned Defendant Smith on August 1, 2006, to arrange to purchase cocaine base from Defendant Smith the following day at the gas station. Fifth, the confidential informant phoned Defendant Smith on August 2, 2006, to further arrange the illicit transaction. Finally, at the expected time on August 2, a green Buick matching the one previously associated with Defendant Smith pulled into the gas station. The Magistrate Judge found that investigators collectively knew all these facts at the time they stopped Defendant Smith. The Magistrate Judge concluded this was sufficient to justify the arrest.

Defendant Smith raises several objections. Many appear to

challenge the credibility of testimony presented at the hearing. Finally, Defendant Smith objects to the legal conclusion that hearsay evidence can be considered at a hearing on a motion to suppress.

## II. Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); accord Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); Davis v. Apfel, 93 F. Supp. 2d 1313, 1316-17 (M.D. Fla. 2000). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609, at 3 (1976), reprinted in 1976 U.S.C.C.A.N. 6162, 6163).

For those issues that have not been specifically objected to, there is no requirement that a district judge review factual findings de novo. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th

Cir. 1993). Instead, the Court reviews such issues for clear error. Liberty Am., 199 F. Supp. 2d at 1276. The court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

**III. Discussion**

This Court overrules each of Defendant Smith's objections and accepts the report and recommendation in full. Defendant Smith's first objection is not entirely clear. Defendant Smith notes that he objected to hearsay throughout the suppression hearing, and he argues that the officers in this case acted on hearsay rather than on personal knowledge. The Court interprets this as a two-part objection: the first part generally challenging the admission of hearsay at the suppression hearing, and the second part arguing that the officers were not entitled to rely upon information communicated to them by others. The Court rejects both parts. As to the first, the Magistrate Judge correctly decided that there is no automatic rule that hearsay cannot be admitted at suppression hearings. United States v. Matlock, 415 U.S. 164, 175 (1974); see also United States v. De la Fuente, 548 F.2d 528, 532–33 (5th Cir. 1977) (noting that strict evidence rules, including the hearsay rule, do not govern suppression hearings). Instead, reliable

hearsay evidence may be admitted, and the judge may consider it for whatever it might be worth.  Matlock, 415 U.S. at 176.

The second part of this objection must similarly be rejected. "Probable cause exists when the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007) (internal quotation marks omitted).  To have probable cause, an officer need not have personally observed all the facts upon which probable cause is founded.  Instead, an officer can rely upon the observations of fellow officers engaged in the investigation.  United States v. Ventresca, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986); see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (including information received by officer from dispatcher as part of determination of whether officer had probable cause).

Moreover, law enforcement officers can rely on information communicated by a confidential informant, at least where there is reason to trust that information.  See United States v. Brundige, 170 F.3d 1350, 1352–54 (11th Cir. 1999) (allowing information

9

provided by confidential informant to support probable cause where confidential informant had strong basis for knowing information and information was sufficiently detailed that any falsity would likely be uncovered); United States v. Talley, 108 F.3d 277, 281-82 (11th Cir. 1997) (allowing information provided by confidential informant to support probable cause where government independently corroborated some information). There is reason to trust information provided by a confidential informant as a result of a properly executed controlled purchase of narcotics. See United States v. Horne, 198 F. App'x 865, 871 (11th Cir. 2006) (noting reliability of controlled purchases where person is searched before transaction, conducts transaction, and shortly thereafter returns with drugs). In this case, the Magistrate Judge was correct that the arresting officers were entitled to rely upon information communicated by other officers and the confidential informant in formulating probable cause to arrest Defendant Smith on August 2, 2006.

Defendant Smith's remaining objections are entirely meritless. His second, third, and seventh objections all note that law enforcement officers did not see Defendant Smith driving the Buick on June 5. These objections are without merit. The Magistrate Judge did not find that officers did recognize Defendant Smith on this occasion. The fact that officers were unable to see Defendant Smith through darkly tinted Buick windows does not affect the

determination that probable cause existed on August 2, 2006.

Defendant Smith's fourth and fifth objections both challenge the finding that Williams personally saw Defendant Smith on July 28, 2006. Williams testified that he made contact with Defendant Smith and gave him $300 on July 28, 2006. (Tr. at 13.) From this testimony, the Court finds that Williams personally saw Defendant Smith on July 28. Inasmuch as the Magistrate Judge made this finding, the Court agrees that the finding was correct.

Defendant Smith's sixth objection is to the finding that the confidential informant telephoned Defendant Smith on August 2, 2006. Defendant Smith argues that Schwall, who was with the confidential informant at the time, had never heard Defendant Smith's voice and therefore could not confirm that the voice on the other end belonged to Defendant Smith. Notwithstanding that Schwall may have been unable to identify Defendant Smith's voice, Schwall has sufficient information to conclude that the other party to the telephone call was Defendant Smith. Inasmuch as the Magistrate Judge found that Schwall knew the other party was Defendant Smith, the Court approves that finding.

Defendant Smith's eighth and ninth objections apparently challenge the finding that Special Agent Smith identified Defendant Smith as having participated in two recorded telephone calls on July 26, 2006. The Magistrate Judge never made such a finding, and these objections are overruled for that reason. The eighth

11

objection also asserts that Williams never saw Defendant Smith. This Court finds that Williams did indeed see Defendant Smith at the July 28 transaction. Finally, the eighth objection claims the confidential informant is unreliable because it took six weeks for the confidential informant to make some sort of identification. This portion of the objection is unclear, and the Court is unable to address it. The Magistrate Judge did not find that the confidential informant was reliable for all purposes. Inasmuch as the Magistrate Judge found the confidential informant to be reliable, that finding was exceedingly limited. Any such finding was limited to situations in which there was reason to rely upon information provided by the confidential informant.

Defendant Smith's tenth objection challenges the Magistrate Judge's conclusion that the confidential informant telephoned Defendant Smith to arrange the August 2 transaction. This objection must be overruled. The officers directed the confidential informant to telephone Defendant Smith. This telephone call was recorded, and Schwall supervised the confidential informant during the call on August 2. Under these circumstances, the officers were entitled to rely upon the confidential informant's representation that Defendant Smith was the other party to the conversations. When the green Buick arrived at the gas station, the officers had additional reason to believe Defendant Smith was the other party to the telephone calls. This

Court approves the Magistrate Judge's finding to that effect.

After conducting an independent examination of the file and upon due consideration of the Report and Recommendation, the Court accepts the Report and Recommendation of the Magistrate Judge and adopts it as the Court's opinion.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

The Court accepts the Magistrate Judge's Report and Recommendation (Doc. # 90) and adopts it as the Court's opinion. Defendant Smith's motion to suppress is DENIED.

**DONE AND ORDERED** at Jacksonville, Florida, this <u>2nd</u> day of November 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record