UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:06-cr-289-J-33MCR

RODNEY LEON SMITH
_____/

### ORDER

This cause comes before the Court pursuant to the Motion for New Trial (Doc. # 167) filed by Smith on March 13, 2008.   The government filed a response on March 27, 2008.  (Doc. # 169.)  For the reasons stated below, Smith's motion for new trial is DENIED.

## I.   Background

On March 6, 2008, following a jury trial Smith was found guilty on one count of conspiracy to distribute cocaine base, and on five separate counts of substantive offenses involving cocaine base.  (Doc. # 164.)  On March 13, 2008, Smith filed his motion for new trial.   (Doc. # 167.)   This motion states twenty-three arguments for a new trial.   Unfortunately, these arguments are pressed with only a very general reference to "the Fourth, Fifth, and Sixth Amendments of the Constitution of the United States, Rule 16 of the Federal Rules of Criminal Procedure, and Rules 404(b), 802, 803 of the Federal Rules of Evidence."  (Doc. # 167, at 3.)  That notwithstanding, it is apparent that the motion requests relief on essentially three theories.  First, the motion contends

1

that there was insufficient evidence to sustain Smith's convictions.  On that theory, it would seem, the motion requests that the Court set aside the guilty verdict and enter a judgment of acquittal.  Second, the motion argues that the verdict is contrary to the weight of the evidence.  Third, the motion challenges various Court rulings governing the course of the trial.  On these latter two theories, it appears, the motion requests that the Court grant a new trial.

## II.  Standard of Decision

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Additionally, the court may set aside a guilty verdict and enter a judgment of acquittal.  Fed. R. Crim. P. 29(c)(2).

Where a motion for judgment of acquittal attacks the sufficiency of the evidence, the court "must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006) (quoting United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005)).  This is a question of law.  Id.

In the related situation where a motion for new trial attacks the jury's verdict as against the weight of the evidence, though, the standard is different.  See Butcher v. United States, 368 F.3d

2

1290, 1297 n.4 (11th Cir. 2004) (noting difference between standards). Rather than presenting a question of law, "[a] motion for a new trial is addressed to the sound discretion of the trial court." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). The court may "weigh the evidence and consider the credibility of witnesses." Id.; accord United States v. Cross, 258 F. App'x 259, 261 (11th Cir. 2007). "If the court concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Martinez, 763 F.2d at 1312 (internal quotation marks omitted); accord Cross, 258 F. App'x at 261. The court may follow this course even if the evidence is legally sufficient to sustain the verdict. Martinez, 763 F.2d at 1312; accord Cross 258 F. App'x at 261; see also Butcher, 368 F.3d at 1297 n.4 ("In a proper case -- a case in which the evidence of guilt although legally sufficient is thin and marked by uncertainties and discrepancies -- there is room between the two standards for a district court to reweigh the evidence and reevaluate the credibility of witnesses." (internal quotation marks and citation omitted)). However, the Eleventh Circuit has stated that "[a] motion for new trial must be viewed with 'great caution.'" United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) (quoting United States v. Hall, 854 F.2d 1269, 1271 (11th

Cir. 1988)).

Where a motion for new trial argues that the court committed errors during the trial, "the convicted defendant has the burden of showing that (1) some error was in fact committed and (2) that such error was prejudicial to him." United States v. Simms, 508 F. Supp. 1188, 1203 (W.D. La. 1980); accord United States v. DeLaughter, No. 8:07-cr-201, 2007 WL 3034645, at *1 (M.D. Fla. Oct. 16, 2007). Even if the defendant has made such a showing, a new trial is not warranted unless the error affected the defendant's substantial rights. Simms, 508 F. Supp. at 1203; accord DeLaughter, 2007 WL 3034645, at *1; see also Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). "An error affects the defendant's substantial rights if it probably had a substantial influence on the jury's verdict." United States v. Rodriguez, 259 F. App'x 270 (11th Cir. 2007) (internal quotation marks omitted) (quoting United States v. Stephens, 365 F.3d 967, 976-77 (11th Cir. 2004)). The court must inquire whether the error "was more likely than not a substantial factor" in the conviction. See Stephens, 365 F.3d at 980 (remanding for new trial after concluding that district court's evidentiary error "was more likely than not a substantial factor in [the defendant's] conviction").

4

## III. Discussion

### A.   Sufficiency and Weight of the Evidence

The first five and ninth numbered paragraphs of Smith's motion all challenge the sufficiency or weight of the evidence.  These paragraphs merely state that the evidence was insufficient, or that the verdict was contrary to the weight of the evidence.  Specifics are entirely omitted.  Faced with such bare statements, the Court declines to comb the record and list all the evidence that supported each element of each offense on which Smith was convicted.  Instead, the Court states simply that the evidence was more than merely sufficient.  As a result, a judgment of acquittal is not warranted.  Moreover, the Court heard all the evidence at this trial and now determines that the evidence does not preponderate against the jury's verdict.  Consequently, a new trial is unwarranted.

### B.   Denial of Smith's Motion to Suppress

Smith states, "The Court erred in denying Defendant's Motion to Suppress Evidence and Statements (Doc. # 82)."  (Doc. # 167.) This is the entirety of Smith's argument on this point, and it is unavailing.  The Magistrate Judge held a hearing and entered a report and recommendation on Smith's motion to suppress.  (Doc. # 90.)  Smith filed several objections.  (Doc. # 97.)  The Court analyzed and overruled each objection, adopting the report and recommendation.  (Doc. # 112.)  The issues surrounding Smith's

motion to suppress have been thoroughly treated already.  In light of Smith's failure to advance any specific argument, the Court declines to revisit this matter.  Suffice it to say that the Court's ruling on Smith's motion to suppress was not in error.  Thus, a new trial is not warranted on this ground.

**C.   Denial of Smith's Motion in Limine**

Smith also states, "The Court erred in denying Defendant's Motion in Limine (Doc. # 142)."  (Doc. # 167.)  This argument suffers from the same deficiency addressed immediately above.  This issue has already been addressed, and Smith does not explain why the Court's initial ruling was error.  The Court concludes that its initial ruling was correct, and a new trial is not warranted on this ground.

**D.   Denial of Smith's Motion to Dismiss for Failure to Disclose Brady/Giglio Material**

Smith's next asserted error follows the pattern.  Smith simply states, "The Court erred in denying Defendant's Motion to Dismiss for Failure to Disclose Brady/Giglio Material (Doc. # 139)."  (Doc. # 167.)  Smith does not explain why the Court's initial ruling was incorrect.  The Court concludes that its initial ruling was correct, and a new trial is not warranted on this ground.

**E.   Denial of Smith's Motions for Mistrial**

In the last of Smith's entirely conclusory arguments, he states, "The Court erred in denying the Defendant's Motion for

Mistrials." (Doc. # 167.) Smith provides no more explanation than this, and the Court concludes that its initial rulings on such motions were correct. A new trial is unwarranted.

### F.   Juror Challenge

In paragraph 11, Smith argues that the Court committed error by refusing to strike a venireman for cause. The venireman's brother-in-law is a court security officer in this courthouse, but he was not involved in these proceedings. When the Court denied Smith's request to strike this venireman for cause, Smith used one of his peremptory strikes to remove the venireman. Thus, the challenged venireman did not sit on the jury. Smith subsequently exhausted his remaining peremptory strikes and arguably requested an additional peremptory strike.[1] The Court did not grant an additional peremptory strike.

If the Court's refusal to remove the challenged venireman was error, it was not error that affected Smith's substantial rights. In United States v. Martinez-Salazar, the Supreme Court addressed a nearly identical situation. 528 U.S. 304 (2000). The trial Court erroneously refused to remove for cause a venireman, and the defendant cured the error by using a peremptory strike. Id. at

_____

[1]Smith explained to the Court that he was required to use a peremptory strike on the challenged venireman, and that strike was thus unavailable to strike another venireman who was seated on this jury. Smith asked that the Court strike that juror in light of his use of a peremptory strike to remove the challenged venireman. The Court denied the request.

309.  There were no challenges to the jury that actually convicted the defendant.  Id. at 310.  Nevertheless, the defendant challenged his conviction on the theory that the trial court's error cost him a peremptory strike by forcing him to use it to correct the error. Id. at 309.  The Supreme Court explained that the trial court's error did not cost the defendant a peremptory challenge.  Id. at 315–16.  Instead, the defendant "used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury."  Id. at 316.  The Supreme Court held "that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause."  Id. at 317.

Unlike in Martinez-Salazar, in the present case, Smith said at trial that he would have used the peremptory strike to remove a juror had Smith not been forced to use it to remove the challenged venireman.  Because he had exhausted his peremptory strikes, the juror was seated.  Smith never questioned this juror's impartiality or the impartiality of the jury as a whole.  As a result, Smith's argument is simply that he did not get his full complement of peremptory strikes because he was forced to use one to produce an impartial jury, i.e. to correct the Court's refusal to strike the challenged venireman for cause.  This argument, however, is foreclosed by Martinez-Salazar.  The Supreme Court held that having

to use a peremptory strike to produce an impartial jury did not impair the right to peremptory strikes under Federal Rule of Criminal Procedure 24.   Id.   The high court reasoned that production of an impartial jury is a "principal reason" for the existence of peremptory challenges.   Id. at 315–16.   When a challenge is used to that end, therefore, a defendant cannot claim that the right to peremptory challenges was infringed.[2]

---

[2]In a concurring opinion, Justice Souter suggested that the right to peremptory strikes may be infringed where the defendant is prevented from using a peremptory strike for a non-curative purpose because he was forced to use the strike to cure the court's error. Martinez-Salazar, 528 U.S. at 317–18 (Souter, J., concurring) ("I write only to suggest that this case does not present the issue whether it is reversible error to refuse to afford a defendant a peremptory challenge beyond the maximum otherwise allowed, when he has used a peremptory challenge to cure an erroneous denial of a challenge for cause and when he shows that he would otherwise use his full complement of peremptory challenges for the noncurative purposes that are the focus of the peremptory right."). Thus, the central difference between the majority and concurring opinions is the importance ascribed to those uses of peremptory strikes not aimed simply at producing an impartial jury. The majority opinion called the production of an impartial jury "a principal reason for peremptories," id. at 316, while Justice Souter called other purposes "the focus of the peremptory right," id. at 318.

In the present case, Smith stated he wanted to use for one of Justice Souter's other purposes the peremptory strike he spent producing an impartial jury. Accepting the reasoning of the majority opinion, the Court determines that this simply is not an impairment of Smith's right to peremptory strikes.

But, even under Justice Souter's reasoning, the Court's refusal to strike the challenged venireman for cause would not warrant a new trial. The Court asked the challenged venireman whether anything her brother-in-law might have told her would affect the venireman's ability to be fair and impartial. The venireman answered in the negative and elaborated that her brother-in-law does not discuss his work very much. Smith did not ask any follow-up questions of the venireman. Faced with this information,

Accordingly, even if it was error for the Court to deny Smith's for-cause challenge to the venireman, the error did not deprive Smith of his right to peremptory challenges. Moreover, Smith does not argue that the jury in his trial was not impartial. Thus, Smith's right to an impartial jury was unaffected. In short, Smith's asserted error did not have any effect on Smith's substantial rights. Consequently, this ground does not support a new trial.

**G.  Special Agent Smith's Expert Testimony**

In paragraph 12, Smith argues that the Court made two errors: (1) allowing Special Agent Smith[3] to testify as an expert and (2) failing to direct Special Agent Smith to provide responsive answers to Smith's questions on cross-examination.

First, the Court did not err in allowing Special Agent Smith to testify as an expert in this case. Special Agent Smith is a Florida Department of Law Enforcement agent with almost four years of experience in narcotics investigations. He has a college degree in criminology and has attended various law enforcement courses. He testified that he had become intimately familiar with drug slang and coded drug language. Similarly, he testified that he had

_____

the Court quite properly concluded that the venireman would have been impartial had she been seated on this jury. See United States v. Dickerson, 248 F.3d 1036, 1045 (11th Cir. 2001).

[3]To avoid confusion, Special Agent Smith is referred to herein as "Special Agent Smith," and defendant Rodney Smith is referred to simply as "Smith."

become familiar with the local market prices for cocaine and with the personal and distribution quantities of cocaine base. Based on this testimony, the Court found that Special Agent Smith was qualified to testify as an expert in drug language, the local market price of cocaine, and the difference between personal and distribution quantities of cocaine base. Smith objected but advanced no specific argument in support of his objection.

The Eleventh Circuit has "recognized the well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug business." United States v. Garcia, 447 F.3d 1327, 1355 (11th Cir. 2006) (internal quotation marks omitted). Additionally, a police officer may testify as an expert in interpretation of "drug codes and jargon." Id. (internal quotation marks omitted). This is exactly what the Court allowed Special Agent Smith to do in this case. Smith has pressed only the bare argument that this was error. (Doc. # 167.) In the absence of a more specific argument, the Court must simply reaffirm its decision to permit Special Agent Smith to testify as an expert. This testimony was proper under Garcia, and a new trial is not warranted on this ground.

Second, while the Court notes that Special Agent Smith was

occasionally less than cooperative on cross-examination,[4] Smith was not prevented from getting responsive answers to his questions on cross-examination.  No error was committed, and a new trial is not warranted on this ground.

### H.   Information from the Confidential Source

In paragraph 13, Smith argues that "a multitude of hearsay" was improperly admitted at trial.  (Doc. # 167.)  Smith specifically identifies "Special Agent Travis Smith's testimony about what the confidential source told him out of court." (Doc. # 167.)  Smith contends that this violated his right to confrontation under the Sixth Amendment.  (Doc. # 167.)

Smith refers to "a multitude of hearsay," but the Court recalls only one such incident.  Smith identifies this incident specifically in paragraph 14.  (Doc. # 167.)  In his cross-examination of Special Agent Smith, Smith was challenging the reliability of the confidential informant.  Smith asked whether Special Agent Smith had trained the confidential informant to trick people.  Special Agent Smith said he did not understand the question.  Then Smith asked whether the confidential informant was

---

[4]For example, Special Agent Smith testified on direct that he gave certain funds to a confidential informant to buy cocaine base from Smith.  Smith inquired on cross-examination whether Special Agent Smith marked this money or prepared it in any way before giving it to the confidential informant.  Special Agent Smith's initial response was that he had never marked or defaced currency.  Additionally, Special Agent Smith feigned confusion on several matters on cross-examination.  Once or twice, this created an unseemly "who's on first" exchange.

acting as a real drug dealer or only posing as a drug dealer when he made the controlled phone calls in this case. Special Agent Smith again responded that he did not understand the question. Smith then asked whether the confidential informant was a real drug dealer during the time frame covered in the indictment. Special Agent Smith responded that the confidential informant told Special Agent Smith that he was buying drugs from Smith before the events involved in this case transpired. At first glance, the Court ruled contemporaneously that Smith had opened the door to this testimony. Then Smith asked whether the confidential informant had been dealing drugs on the side even while working for the government. Special Agent Smith answered that, during trial preparation, the confidential informant told the government that he had been buying cocaine base from Smith on the side without the government's knowledge during the investigation. During this fast-paced exchange, the Court ruled that Smith had opened the door to this testimony.

Later, the Court excused the jury and revisited this issue. The Court entertained argument and promised to study the issue and give a curative instruction if needed. The next morning, the Court offered to give a curative instruction if Smith wanted to propose one. The Court asked Smith to draft a specific curative instruction on this issue and submit the proposed instruction the next day. Instead, Smith drafted a "curative" instruction

directing the jury to weigh with great care all out-of-court statements. The Court declined to give such an instruction, and again asked Smith if he would like the Court to give a specific curative instruction. Smith declined the offer.[5]

In short, the Court offered a curative instruction to correct any exposure of inadmissible hearsay -- or prior bad acts -- to the jury. Smith made a strategic decision to forgo such an instruction. That was Smith's decision to make, and the Court committed no error. Even if this was erroneous, though, the Court finds that Special Agent Smith's testimony on this matter was not a substantial factor in Smith's conviction. Thus, a new trial is not warranted on this ground.

## I. Audio Recordings

In paragraph 15, Smith argues that the Court erroneously admitted audio recordings of controlled calls between himself and the confidential informant. Smith mounts a two-pronged challenge. First, he explains that the audio recordings were not consensual and contends that they should have been excluded for that reason. Second, he asserts that there was no evidence of voice identification.

_____

[5]In paragraph 23, Smith argues that the Court erred in declining to give Smith's special curative instruction. At trial, the Court concluded that Smith's instruction was too general to be effective and in fact mischaracterized the appropriate use of certain out-of-court statements. The Court's refusal to deliver this instruction was not error.

This second prong deserves little discussion.  Smith's memory of the trial is faulty.  There was evidence of voice identification.  Special Agent Smith testified that he identified Smith's voice on the other end of the telephone calls.  Special Agent Smith heard Smith's voice firsthand following his arrest.

The first prong of Smith's challenge appears to proceed on the theory that the government was required to have either Smith's consent or a warrant before it could record these telephone calls.  This is not so.  Obviously, the confidential informant consented to the recording of these telephone calls.  The Supreme Court has long held that the government does not violate the Fourth Amendment by employing a secret agent clandestinely to record his communications with the target of surveillance.  United States v. White, 401 U.S. 745 (1971).  This is because a wrongdoer does not have a constitutionally justifiable expectation that his confidant will not record their conversation and turn it over to the government.  Id. at 751.

> Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police.  If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize.  But if he has no doubts, or allays them, or risks what doubt he has, the risk is his.

Id. at 752.  When Smith communicated with the confidential informant, he ran the risk that the conversation would be recorded and turned over to the government.  That is exactly what happened, and the law gives no quarter to Smith's complaint.  The Court did

15

not err by admitting the recordings, and a new trial is not justified on this ground.

In paragraph 16, Smith argues that the Court erred in admitting transcripts of these recorded telephone calls because there was no evidence of the accuracy of the transcripts. Smith is mistaken. Special Agent Smith testified that he prepared these transcripts and reviewed them line-by-line to ensure they were accurate. A new trial is not warranted on this ground.

### J.   Limitations on Cross-Examination

In paragraph 17, Smith argues that the Court erred by chastising his counsel for cross-examining a government witness with a traffic ticket that had not previously been shown to the government. This exchange occurred at sidebar, and therefore could not possibly have had a substantial influence on the jury's verdict. Consequently, a new trial is not warranted on this ground.

In paragraph 18, Smith argues that the Court erred in preventing Smith from eliciting from a government witness that the witness had been accused of shooting the brother of Smith's co-defendant. (Doc. # 167.) The government's witness was Anthony Bennett, and he had testified on direct examination that he bought crack cocaine from Smith at the Gambia Woods Apartments on numerous occasions. (See, e.g., Doc. # 172, at 24.) On cross-examination, Smith's counsel inquired whether Bennett had ever been asked not to

return to the Gambia Woods Apartments. (Doc. # 172, at 31.) The government objected, and requested a conference at sidebar. (Doc. # 172, at 31.) At sidebar, the government explained that Smith's counsel was attempting to bring out testimony that Bennett had been accused of shooting the brother of Smith's co-defendant. (Doc. # 172, at 31-32.) The government argued that this impeachment of Bennett's character for truthfulness was impermissible under Federal Rule of Evidence 609 because Bennett had not been convicted of the shooting. (Doc. # 172, at 32.) Smith's counsel countered that he was not attempting to impeach Bennett's credibility. (Doc. # 172, at 32.) Rather, he was simply trying to show that Bennett was not at the Gambia Woods Apartments to buy cocaine from Smith because Bennett was prohibited from being there.[6] (Doc. # 172, at 32.)

The Court excluded the evidence on two rationales. First, the evidence was not proper impeachment of Bennett's character for truthfulness because it did not meet the requirements of Rule 609. (Doc. # 172, at 32.) Second, the evidence was inadmissible under Rule 403 because its probative value for other purposes was substantially outweighed by the risk of unfair prejudice. (Doc. # 172, at 32.) This ruling was correct. Rule 609 provides, "For the purpose of attacking the character for truthfulness of a witness,

---

[6]Presumably, though this was never explained, the shooting resulted in Bennett's persona non grata status at the Gambia Woods Apartments.

. . . evidence that a witness other than an accused has been <u>convicted</u> of a crime shall be admitted . . . ."  Fed. R. Evid 609(a) (emphasis added).  Thus, evidence that Bennett was <u>accused</u> of the shooting is not admissible under Rule 609.[7]

Inasmuch as the evidence was offered to show Bennett was not actually at the Gambia Woods Apartments, its probity was substantially outweighed by the risk of unfair prejudice.  The Court did not prevent Smith from eliciting testimony that Bennett was prohibited from being at the Gambia Woods Apartments, only from eliciting that the reason for the prohibition was because Bennett was accused of shooting a defendant's brother.  That Bennett was prohibited from being at the Gambia Woods Apartments is somewhat probative of whether he actually bought crack cocaine there from Rodney Smith.[8]  But the reason behind the prohibition contributes very little to this analysis.  And in this case, that reason carried great risk of unfair prejudice.  Bennett was accused of

---

[7]The evidence was not proper impeachment under Rule 608(b), either.  That rule allows impeachment of a witness' character for truthfulness by inquiry into specific instances of the witness' conduct.  The rule permits this inquiry, though, only if the conduct is "probative of truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  In this case, the shooting was simply not probative of truthfulness or untruthfulness.  See <u>United States v. Parker</u>, 133 F.3d 322, 327 (5th Cir. 1998) ("Violent crimes . . . are irrelevant to a witness's character for truthfulness.").

[8]This is only somewhat probative.  Bennett was not shy about admitting his sales of crack cocaine.  It is no mere speculation that one who flouts the nation's drug laws might also disregard an order to stay away from the Gambia Woods Apartments.

shooting the brother of a defendant in this trial. That information may have provoked in the jury sympathy for the defendant, and disgust at the government for dealing with such a person as Bennett. This great danger of unfair prejudice substantially outweighed the minimal probity of the reason behind Bennett's persona non grata status. Accordingly, it was not error for the Court to exclude this evidence, and a new trial is not warranted on this ground.

In paragraph 21, Smith argues, "The Court erred by generally limiting defense counsel's cross-examination based on the Government's nebulous objections." The Court does not recall limiting any party's cross-examination based on nebulous objections. Accordingly, a new trial is not warranted on this ground.

### K. Florida Department of Law Enforcement Employees' Testimony

In paragraph 19, Smith contends, "The Court erred by limiting defense counsel's questioning of FDLE Analyst Vicky Young's testimony as to the chain of custody of evidence without any prior testimony authenticating such evidence." (Doc. # 167.) This is the entirety of Smith's discussion of this issue, and the Court is unsure precisely what Smith's argument is.

Young, an evidence clerk with the Florida Department of Law Enforcement, testified that she received two packages of cocaine from law enforcement officers. She marked these with bar codes and

19

stored them.  When these packages were introduced at trial, Young recognized them as the same packages she had received from the law enforcement officers.  Later, Special Agent Smith testified that he received one of these packages from a confidential informant who himself purportedly received it from Smith.  Special Agent Smith testified that the other package was discovered in Smith's green Buick on August 2, 2006, when Smith was arrested.  Special Agent Smith testified that he submitted these packages to Young.

Federal Rule of Evidence 901 requires authentication of real evidence.  To authenticate an item of real evidence, the proponent must present "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Ultimately, that is exactly what the government did in this case.  It is unimportant that Young's testimony by itself was insufficient to support a finding that the cocaine in these two packages was the same cocaine distributed by, or seized from, Smith.  Inasmuch as Smith challenges the cocaine as unauthenticated, Smith's challenge must fail.  The cocaine was properly authenticated by a combination of testimony in this case. The Court did not err, and a new trial is unwarranted on this ground.

Inasmuch as Smith challenges a limitation on his cross-examination of Young, Smith's objection is too general to be analyzed.  Suffice it to say that the Court did not improperly

limit cross-examination of this witness, and a new trial is unwarranted on this ground.

In paragraph 20, Smith states, "The Court erred by limiting defense counsel's questioning of FDLE Chemist Katherine Warniment, during cross-examination, about her qualifications and evidence that was not submitted for testing." (Doc. # 167.) Warniment testified that she analyzed one of the packages of cocaine. On cross-examination, Smith asked whether Warniment had training in hair analysis, tire impression analysis, textile fundamentals, and other forensic sciences. The Court sustained relevance objections to this line of questioning. Smith declined to explain the relevance of this line of questioning during trial, and he has not since explained it. On their face, these questions were not aimed at eliciting relevant evidence. Thus, in the absence of any argument for their possible relevance, the Court did not err in sustaining relevance objections to these questions. See United States v. George, 201 F.3d 370, 372–73 (5th Cir. 2000) (affirming exclusion of facially irrelevant evidence in absence of demonstration of possible relevance). As a result, a new trial is unwarranted on this ground.

**L.   Government's Closing Argument**

In his closing argument, Smith pointed to problems with the

government's case[9] and suggested that Special Agent Smith had scripted the entire prosecution to cover up novice-level police work. Thus, Smith's theory was that a novice narcotics agent orchestrated Smith's prosecution to further the narcotics agent's own career. In rebuttal, the prosecutor commented sarcastically that he now has to indict every member of the narcotics task force involved in this case. In paragraph 22, Smith argues that the Court erred by denying Smith's motion for a mistrial based on this comment.

Not so. The skilled prosecutor stayed within the bounds of permissible argument. He may have come close to the improper implication "that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty," Hall v. United States, 419 F.2d 582, 584 (5th Cir. 1969), but he never actually made that implication. The prosecutor's statement about indicting members of the task force implied only that, to believe Smith's defense, the jury would also have to believe that the law enforcement officers were criminals. The prosecutor refrained from

---

[9]Smith noted that one law enforcement officer refreshed his recollection by reading from another officer's report, that the government surveillance tape went blank at just the time it would have captured the image of the person who sold drugs to the confidential informant, that no fingerprints appeared on the baggies of cocaine base, and that there were some inconsistencies in testimony.

any improper argument that the government did not indict these officers because it knew, based on facts developed apart from the orderly machinery of the trial, that they were not criminals. Nor did the prosecutor personally vouch for the integrity of the officers with this statement. The prosecutor's statement simply was not improper, and a new trial is not warranted on this ground.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Rodney Smith's Motion for New Trial (Doc. # 167) is hereby DENIED.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 7th day of July 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record